**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Case No. _____**

ATLAS INVESTMENTS, LLC

*Plaintiff,*

v.

THE TOWN OF SOUTHWEST RANCHES, FLORIDA,
KEITH POLIAKOFF,
JULIO A. MEDINA,
ANDY BERNS, &
RUSSELL MUNIZ

*Defendants.*

_____/

## COMPLAINT

Plaintiff, Atlas Investments LLC ("Plaintiff", "Atlas" or "Cielo Farms"), by and through its undersigned attorneys, bring this Complaint against Defendants, the Town of Southwest Ranches, Florida ("Southwest Ranches" or the "Town"), Keith Poliakoff, Julio A. Medina, ("Medina"), Andy Berns ("Berns"), and Russell Muniz ("Muniz"), and alleges the following:

## INTRODUCTION

1.     This case concerns the unconstitutional, retaliatory, and unlawful actions by the Town of Southwest Ranches and its citizen, political operative and legal counsel Keith Poliakoff, against Plaintiff, the owner and operator of a lawful agrotourism business and property – Cielo Farms.

2.     Cielo Farms has been systematically targeted through abuse of municipal authority, selective enforcement, and deliberate obstruction of its legal rights. The Town's actions, executed through its elected officials, legal counsel, law enforcement, and code enforcement officers, reflect

a coordinated scheme to deprive Plaintiff of its property and economic liberty without due process of law.

3.      The governing principles of ordered liberty, as enshrined in the United States Constitution, require that government action be constrained by the rule of law, not by arbitrary and capricious exercises of power. The framers recognized that liberty depends on the structure of government, and here, that structure has been willfully dismantled by officials abusing their authority for personal and political gain.

4.      Cielo Farms has been subjected to an orchestrated campaign of harassment and deprivation, including the denial of security permits, the fabrication of zoning and code violations, and the manipulation of enforcement mechanisms to disrupt and ultimately shutter Cielo Farms' business for almost two years. These actions, taken under color of law, violate Cielo Farms' fundamental rights to due process, equal protection, and protection from unlawful takings.

5.      The Town's campaign is not based on any legitimate governmental interest but rather on retaliatory motives and political retribution. Cielo Farms has been targeted through a pattern of conduct in which local officials have distorted the enforcement of laws to advance a predetermined agenda of economic and reputational destruction.

6.      The Town has further compounded these constitutional violations by engaging in fraudulent misrepresentation of laws, colluding with law enforcement to surveil and disrupt lawful business operations, and knowingly disseminating false information to interfere with Cielo Farms' business relationships.

7.      The Supreme Court has long held that property rights are foundational to individual liberty, emphasizing that government must not "force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United*

*States*, 364 U.S. 40, 49 (1960). The Town has disregarded this principle, weaponizing its regulatory authority to serve illegitimate ends.

8.     Plaintiff seeks damages and equitable relief under 42 U.S.C. § 1983 for violations of its constitutional rights, including substantive and procedural due process, equal protection, and freedom from unlawful takings. Plaintiff also assert claims under state law for tortious interference, and other business-related harms and seeks declaratory and injunctive relief in relation to Defendants' abhorrent actions.

9.     Government exists to serve the people, not to oppress them. When those in power turn the instruments of governance into tools of intimidation and personal vendettas, the judiciary must act as the bulwark against such encroachments. Plaintiff brings this action not only to vindicate its own rights but to uphold the rule of law itself.

## PARTIES

10.     Plaintiff, Cielo Farms, is a legally protected agricultural property with additional protections for agricultural use under Florida agritourism statutes (§§ 570.85-570.89) and operates within the Town of Southwest Ranches. Plaintiff engages in agritourism activities that are explicitly safeguarded under Florida law, ensuring that its operations contribute to the agricultural and economic vitality of the region.

11.     Defendant, the Town of Southwest Ranches, is a municipal entity organized under the laws of the State of Florida. As a local government, it is subject to suit under 42 U.S.C. § 1983 for its unconstitutional policies and actions undertaken under color of state law.

12.     Defendant, Keith Poliakoff, is a private citizen and attorney who serves as legal counsel for the Town of Southwest Ranches. Acting in both his unofficial and official capacity and under color of law, Poliakoff played the central role in directing and executing the unlawful

actions against Cielo Farms, including legal misrepresentations, regulatory manipulation, and obstruction of Plaintiff's business operations. Poliakoff is the kingmaker of the Town, holding Court in the shadows of both the local legal system and municipal governance. As Town Attorney, he not only commands significant revenue through his law firm's extensive and profitable ties to the Town, but he also exercises a remarkable level of influence over the very structure of the Town's legal proceedings. Handpicking both the magistrate who rules on Code violations and the Code enforcers who investigate them, Poliakoff has crafted a self-sustaining loop of power that ensures his law firm's steady cash flow from the Town's legal matters. At various times material hereto Poliakoff was acting under different hats including, as a private citizen of the Town, as the Town Attorney, and as a member and owner of his law firm, Government Law Group, PLLC. At all times material hereto, Poliakoff acted with an improper motive and any reasonable person within his shoes would have known that the questionable conduct sued upon herein violated clearly established law.

13.     Defendant, Julio A. Medina, is a private citizen who serves as the Code Compliance Director for the Town of Southwest Ranches. In this capacity, Medina was directly involved in carrying out the unlawful measures against Cielo Farms, engaging in actions that included misrepresenting legal requirements, manipulating regulatory processes, and interfering with Plaintiff's business operations. At all times material hereto, Medina acted with an improper motive and any reasonable person within his shoes would have known that the questionable conduct sued upon herein violated clearly established law.

14.     Defendant, Andy Berns, is a private citizen who served as the Administrator for the Town of Southwest Ranches at all times material hereto up until December 2023. In this capacity, Berns was directly involved in carrying out the unlawful measures against Cielo Farms, engaging

in actions that included misrepresenting legal requirements, manipulating regulatory processes, and interfering with Plaintiff's business operations. At all times material hereto, Burns acted with an improper motive and any reasonable person within his shoes would have known that the questionable conduct sued upon herein violated clearly established law.

15.     Defendant, Russell Muniz, is a private citizen who served as the Administrator for the Town of Southwest Ranches at all times material hereto commencing in December 2023. In this capacity, Muniz was directly involved in carrying out the unlawful measures against Cielo Farms, engaging in actions that included misrepresenting legal requirements, manipulating regulatory processes, and interfering with Plaintiff's business operations. At all times material hereto, Muniz  acted with an improper motive and any reasonable person within his shoes would have known that the questionable conduct sued upon herein violated clearly established law.

## JURISDICTION, VENUE & APPLICABLE LAW

16.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1367.

17.     Venue lies in the Southern District of Florida because the cause of action accrued and the parties are located within this district.

18.     All conditions precedent to bringing this action have been performed or waived.

## BACKGROUND

19.     This case begins in the town of Southwest Ranches, Florida, where Plaintiff's principal and managing member, Miguel Rodriguez Albisu ("Mr. Rodriguez"), acquired a parcel of land with the intent to develop an agricultural operation. In November 2020, Plaintiff purchased the 4.95-acre property at 4680 Volunteer Rd., Southwest Ranches, Florida (Cielo Farms), with the express purpose of maintaining an agricultural business, including the establishment of a nursery

and livestock operation. *See* Aerial View Photo of Property, **Exhibit "A."** His vision was to create a legally compliant and thriving agricultural business that would serve both commercial and community interests.

20.     In preparation for his relocation to Southwest Ranches, Mr. Rodriguez, on behalf of Plaintiff, explored land options that would allow him to develop an agricultural property with other future uses. With this in mind, Plaintiff sought a parcel of land suitable for agricultural use, ultimately acquiring Cielo Farms.

21.     When Plaintiff purchased the property on November 19, 2020, it had languished on the market for years with little interest. Situated along a major thoroughfare and across the street from a major shopping center, the land was densely overgrown—essentially a forest—offering a prime opportunity for redevelopment. Immediately after closing, Plaintiff began clearing and preparing the site. By December 2020, Mr. Rodriguez had acquired cattle and applied for an agricultural designation to the Broward County Property Appraiser, which was swiftly approved the following month for the 2021 tax year.

22.     Mr. Rodriguez sought nothing more than to exercise his property rights within the bounds of Florida law. Instead, he encountered a relentless and improper effort by officials in the Town of Southwest Ranches to stifle his business through procedural barriers, arbitrary enforcement, and regulatory overreach.

23.     During the initial development phase, Plaintiff observed a significant presence of landscaping businesses operating in the area. This insight led him to consider transitioning from cattle ranching to a nursery business, which would maintain the agricultural designation while offering a more viable long-term business. To ensure compliance, Plaintiff sought guidance from Defendant Julio Medina ("Medina"), Head of Code Enforcement for the Town of Southwest

Ranches. In their discussions, Medina confirmed to Mr. Rodriguez that Plaintiff could apply for a nursery designation but warned that the Town had imposed a self-imposed moratorium on new nurseries—a restriction not supported by state law.

24.     Having been informed of the alleged moratorium and being concerned with what seemed like overreach, Mr. Rodriguez, on behalf of Plaintiff, consulted directly with the Florida Department of Agriculture, who confirmed there was no such moratorium in place. The Florida Department of Agriculture sent a state inspector to the property who swiftly granted Plaintiff a State Nursery License following the inspection. Confident in his compliance with state law, Mr. Rodriguez proceeded with the development, investing heavily in infrastructure, including irrigation systems, fencing, roads, and deforesting to support nursery operations.

25.     As construction progressed, Plaintiff encountered increasing resistance from Town officials. Although Mr. Rodriguez had secured the necessary approvals under Florida's agricultural statutes, the Town attempted to enforce permit requirements on structures that were normally exempt under agricultural zoning laws. Crucially, Florida agritourism statutes preempt local governments from requiring special permits to conduct these events. This means that the Plaintiff is not legally required to pull any special permits from the Town to host weddings, receptions, or other celebratory events on its property.

26.     In this regard, Florida's agritourism statutes (Fla. Stat. § 570.85-89) are designed to encourage the public's engagement with agricultural operations, providing farmers the freedom to diversify their income through various events. These laws explicitly protect a broad range of activities, ensuring that local governments cannot enforce ordinances that interfere with agritourism on lands classified as bona fide agricultural. Under Florida agritourism laws, the

following activities are statutorily protected: (a) Farm Weddings, (b) Celebratory Events, (c) Festivals and Seasonal Celebrations, and (d) Education and Interactive Events.

27.     When Plaintiff's contractor was ordered by the Town to cease work on a pergola structure, Mr. Rodriguez, on behalf of the Plaintiff, personally informed Medina that the project was part of his agricultural operations, and thus, did not require a permit. Nevertheless, in an effort to avoid conflict, Plaintiff agreed to file for a permit. Despite Mr. Rodriguez's compliance, Town officials continued to obstruct his efforts, losing his permit applications and checks multiple times—a pattern that suggested intentional administrative delay rather than mere bureaucratic inefficiency:

Date: Fri, 18 Nov 2022 16:18:49 +0000
From: Julio Medina <jmedina@southwestranches.org>
To: Debra Ruesga <druesga@southwestranches.org>
Cc: Dan Stewart <dstewart@southwestranches.org>, Russell Muniz <rmuniz@southwestranches.org>
Subject: RE: Public Request - 4680 SW 148 Ave

Debra,

There have been no permits issued. During conversation with one of their property representatives, they were informed they had to get a permit to host any events, however their contention is that a permit is not required due to their agricultural classification and their belief that the gatherings are related to their AG designation. Thus we are presenting a Code case to challenge their claim as we believe the operation is not in accordance to the agricultural use the property was granted.

Regards,

Julio A. Medina
Code Enforcement Director
Town of Southwest Ranches
13400 Griffin Road
Southwest Ranches, Florida 33330-2628
(954)343-7458 (Direct)
(954)434-1490 (Fax)
jmedina@southwestranches.org

**From:** Debra Ruesga
**Sent:** Friday, November 18, 2022 11:11 AM
**To:** Julio Medina
**Cc:** Dan Stewart ; Russell Muniz
**Subject:** Public Request - 4680 SW 148 Ave

Hi Julio,

Can you please provide all event permits applied for 4680 SW 148 Avenue (Cielo Farms/Atlas Investments) from 2021-present.

The requester will call me today for an update.

Thank you for your help.

Debra

28.     It is now known that Poliakoff and the Town have a history of wrongfully enforcing code compliance regulations against residents and unlawfully denying them the use of their rightful State agricultural designations. Beyond just the Plaintiff, the Town and Poliakoff have engaged in a systemic pattern and practice of asserting an illegitimate authority to override State agricultural designations, arbitrarily stripping residents of valuable property rights based on their own discretionary and unlawful determinations. The Town has received numerous complaints from residents and has faced lawsuits for employing similar—though perhaps not as egregious—tactics to selectively target individuals and interfere with their property rights in a manner that violates Florida law and due process protections.

29.     The hostility reached new heights in November 2022, when Plaintiff encountered Keith Poliakoff, citizen of the town, son to the former Mayor and current Town Attorney. Upon learning of Plaintiff's State Nursery License, Poliakoff directed Town officials to take steps to block the operation of Cielo Farms in contradiction to well established Florida law. Poliakoff, a known political advocate and operative for the Democratic party, instigated his war against Cielo Farms the moment word spread throughout the town that Cielo Farms was hosting an election watch party for the Republican party on November 8, 2022.

30.     Prior to the Republican election watch party on November 8, 2022, the Plaintiff had successfully hosted about 25 events without incident or code citations.  The Plaintiff had also invested tens of thousands of dollars in marketing expenses associated with publicly promoting the new venue to the public.

31.     Prior to the Republican election watch party on November 8, 2022, Doug McKay ("McKay"), the former Mayor of the Town of Southwest Ranches, reached out to Plaintiff to host a Republican Election Party at Cielo Farms. Having assisted Plaintiff in acquiring Cielo Farms'

certificate of use, Plaintiff believed it was fitting to allow the event to be held at its premises. Mr. Rodriguez, however, was unconcerned with the event's political purpose and simply agreed to host it as a nice gesture.  Later on, Mr. Rodriguez learned that the political watch election included a Republican challenger to the Town's sitting council member, Bob Hartmann.

32.     On the night of the Republican election watch party, Defendant Poliakoff, acting in his capacity as a private resident, lodged a complaint with the Town and Medina. Notably, Poliakoff does not live near Plaintiff's business, making his complaint particularly suspect. Upon information and belief, this complaint was a retaliatory act based on Poliakoff's differing politics and driven by Plaintiff's decision to host a Republican election watch party for a candidate challenging the incumbent Town Council member and Poliakoff's friend, Hartmann.

33.     Defendant Medina has testified under oath that Poliakoff has made multiple code complaints (approximately 5-7) against the Plaintiff's business to Medina. Defendant Medina testified that Defendant Poliakoff was both angry and upset about the fact he wanted certain actions taken against the Plaintiff, including citations for code violations.

34.     Immediately following the Republican election watch party, Cielo Farms became subjected to heightened surveillance. Medina, along with Andy Berns, Town Administrator of Southwest Ranches, David Kuczenski, Town Council Member, Russell Muniz, and others, significantly amplified their harassment and monitoring of the Plaintiff's business.

35.     On November 10, 2022, Davie Police Officer Stephen Alston was asked by his Sergeant to "contact the Assistant Town Administrator for Southwest Ranches (Mr. Russell Muniz)."  Mr. Muniz told the officer that the town had received complaints about a disturbance at a property (Cielo Farms).  The complaint, logged on November 15, 2022, came directly from Defendant Poliakoff. *See* Complaint dated November 15, 2022, **Exhibit "B."**

36.     As described in Officer Alston's report, there was no activity or disturbance at Cielo Farms. There was music coming from the property to the north.  The Officer contacted Mr. Muniz and advised him that there were no town ordinance violations on 11-10-22.  Despite the officer's call and the police report indicating that there was no ordinance violation, the Town proceeded to issue code enforcement violations and fines for the fabricated violation on November 10, 2022. *See* November 10, 2022 Davie Police Report, **Exhibit "C."**

37.     As shown below, the Town's campaign against the Plaintiff was not an impartial enforcement of regulations—it was a calculated effort to manufacture a case against a lawful business they had already decided to shut down for nefarious reasons. Rather than enforcing the law in good faith, the individually named Defendants instructed their police and investigators to actively hunt for violations, directing them to meticulously document anything that could be used as ammunition against the Plaintiff.

38.     They monitored the property, counting guests as they entered, searching for any justification to claim a permit was required or the business was unlawfully operating. At the same time, they openly admitted, "*As long as he has AG (exemption), he (Mr. Rodriguez) could be right*." Yet, instead of accepting the possibility that the Plaintiff was operating lawfully, the investigator responded, "*I'll be on the lookout at least to try to give us the best chance of winning.*" The goal was not to ensure compliance—it was to tilt the scales in their favor. Examples of communications between Defendant Berns, Defendant Medina, and Code enforcement officer Manfred, are found below.



**Left conversation (Andy):**

Thu, Dec 1 at 6:02 PM

I just heard Cielo Farms across from Publix has a lot of traffic inbound now. Please document as needed

I'm just finishing up a meeting on 164th. I'll head over now.

Perfect. Got everything we needed.

Fri, Dec 2 at 11:51 AM

What's the maximum number of people before needing a permit for a party? 35?

👍 30

Fri, Dec 2 at 6:16 PM

Cielo Farms at it again tonight

Yep heading there with Manfred now.

**Right conversation (Andy):**

Yep heading there with Manfred now.

Would it help to have police document it? I know they're not fond of issuing NTA's

Even if they don't want to issue NTA, a report should help.

Can you reach out to PD, or do you need me to?

Who do you contact?  I know Jeff won't even answer my call if o try.

Capt. Shawn Ravine  CR
Davie Police

I'll call now

Just let him know I asked you to call

Sun, Dec 4 at 7:33 AM

From David K. Can you reach out to him today? This is about the



**Left conversation (Andy):**

Sun, Dec 11 at 2:04 PM

Just saw a DJ van pulling into Celio

We'll document, but this is going to be a battle. From what I've heard, he fully believes he's agri-tourism and will fight us until the end. As long as he has ag, he could be right

I'll be on the lookout and continue to document. At least try to give us the best chance of winning.

Tue, Dec 20 at 9:30 AM

**Right conversation (Andy):**

Thu, Jan 12 at 5:58 PM

Cielo farms has something going. Please document, I'm in with Bob

I'm still here but will head out soon to take a look.

Got some pictures but it seems they're learning. They must have parked cars in the rear now. The front is unusually empty but you can tell there's a gathering. Regardless I'll testify to what I saw but the front isn't full of cars the way it normally is.

Thu, Jan 12 at 7:55 PM

You need to watch the video from tonight

It's not up yet? I tried searching for it.

Russell and Emily are both watching now

Last 20 minutes have been code intensive





39.     As shown above, the Town officials demanded photos and videos as supposed "evidence," only to dismiss what was gathered as inadequate, saying, "*Can't do better?*" and "*That doesn't show enough*." This was not an objective inquiry—it was a premeditated strategy to build a case against the Plaintiff, even as they openly acknowledged "*we'll document, but this is going to be a battle*" and the Plaintiff "*may be right*". The Town's actions were nothing short of a deliberate and improper attempt to fabricate violations, proving that this was never about enforcing the law—it was about ensuring they won at any cost.

40.     Town Attorney Poliakoff had an unusual request when he summoned Davie Police Captain Shawn Ravine to Town Hall. Instead of discussing a criminal investigation or a public safety matter, Poliakoff attempted to enlist the police in his personal code enforcement crusade. He wanted the Davie Police to surveil and arrest the Plaintiff for what he claimed were violations of the Town's municipal code—never mind that code violations aren't crimes and police don't investigate or make arrests for them. In essence, Poliakoff was asking the police to abandon their actual duties and step outside the bounds of their authority to harass the Plaintiff on his behalf.. In this regard, Captain Ravine testified as follows:

> Q.   Okay.  So you agree with me, it's a rather unusual occurrence if you're working a full workweek every week day in, day out, month in to month out, once a year there's such a significant issue for the Town of Southwest Ranches that the city attorney is calling you in for a meeting, right?
>    A.   Correct.
>
>    Q.   And the police department, the Davie Police Department does not enforce noncriminal laws or town
>
> ordinances, right?
>    A.   Right.
>    Q.   And there's a difference isn't there between a
>    Q.   Code enforcement was specifically assigned in Southwest Ranches to the code enforcement division, which was headed up by Julio Medina, right?
>    A.   Correct.

Q.   So when you were called to this meeting with Keith Poliakoff, the town attorney for Southwest Ranches where the town manager Andy Burns was there and Julio Medina, the code enforcement officer was there, you soon learned that this had to do with something that was not criminal in nature, right?

A.   Yes.

Q.   And you recognized in that meeting that the police department was not going to be enforcing noncriminal code enforcement issues in Southwest Ranches, right?

A.   Correct, yes.  We would take reports if requested, but we were not enforcing their code enforcement violations.

Q.   And what did Keith Poliakoff tell you at that

meeting concerning Cielo Farms and the owner of Cielo
Farms, what did he tell you was the issue that he was
having with them?

A.    The issue that I remember was that the property
was designated agricultural and that they had a wedding
venue and were running businesses every weekend, weddings
or parties every weekend on the property, which was in
violation of their ordinance because it was supposed to be
an agricultural property.

Q.    And did Mr. Keith Poliakoff, the town attorney
for Southwest Ranches, tell you at that meeting that he
was worried or concerned or upset or angry that Cielo
Farms was having weddings on their property in Southwest
Ranches?

A.    I know that they were upset over the violation,
yes.  But I remember him saying that he was going to
discuss that with our legal adviser, Greg Rossman, not me.

Q.    And the town attorney at this meeting, Mr. Keith
Poliakoff, town attorney for Southwest Ranches, requested
you directly as the captain in the Davie Police Department
for road patrol officers to make arrests at Cielo Farms
when weddings were thrown, right?

A.    Yes, to issue NTAs, yes.

Q.    And even though Mr. Keith Poliakoff, the town
attorney requested that you make arrests at Cielo Farms
when they throw weddings at that property you advised him
that you were just not going to go along with that because

that was just not the law, right?

    A.   Correct.

    Q.  Did it concern you that the town attorney Keith Poliakoff was asking you originally at the meeting to use police officers to enforce alleged, alleged code enforcement situations, did that concern you?

    A.   Initially, yes.  But when I explained that we weren't going to do that and why I think he understood.

    Q.  And you were in a bad position because you're being asked by Keith Poliakoff, the attorney and Andy Burns, the town manager to do criminal enforcement on a code enforcement issue and you believed as captain with your years of experience that this was not a criminal matter and that you and your officers would not get involved.  But you would allow Mr. Greg Rossman, the

police legal advisor and the town attorney, Keith Poliakoff work that out amongst themselves, right?

    A.   Correct.

41. On January 11, 2023, the Davie Police Department ("Police Department") reluctantly agreed and initiated police surveillance of Cielo Farms:

**From:** Shawn Ravine
**Sent:** Wednesday, January 11, 2023 4:35 PM
**To:** Tara Bradley ; Scott Leon ; Brian Jessup
**Cc:** Jeffrey Hobales ; Gregg Rossman ; aberns ; Russell Muniz ; Julio Medina
**Subject:** Cielo Farms Nursery

Lieutenants Bradley, Jessup, and Leon,

Please have your SWR officers conduct an extra watch on the weekends at Cielo Farms Nursery (4680 SW 148 th Ave). The owners consistently violate Southwest Ranches' code by holding events, such as weddings, parties, etc., on their property. They are designated as a Nursery and are supposed to be an agricultural site, not a wedding venue. SWR Code Enforcement is currently handling and citing the owner when violations are found.

Town Administrator Berns requests that we conduct an extra watch each weekend (Friday and Saturday nights) between 2000-0000 hours to see if any events are going on. If there is an event on the property, have the officer write a police report each time documenting what they observe and hear (such as parking, crowds, noise, music, etc.). Then please forward that case number to Detective Hobales and Julio Medina from SWR Code Enforcement (jmedina@southwestranches.org).

We are working with Greg Rossman to devise a long-term solution to this problem and possibly some criminal enforcement. For now, we must document each violation and show a pattern of consistent refusal from the owner to follow the rules even though the Town of SWR has warned them.

The owners of the property are Miguel and Georgina Rodriquez.

I appreciate your cooperation with this matter. If you have any questions, feel free to contact me.

Thank you.

42.     The above message shows an over-the-top surveillance scheme wherein the Town officials, including Berns, Muniz, and Medina, were part of a coordinated effort to direct police to conduct special weekend surveillance, document every perceived violation, and file police reports, all while the Town code enforcement was already handling the matter. The Police Department even suggested exploring potential criminal enforcement, despite expressly acknowledging that the business is designated as an agricultural site.

43.     Yet, the Town's effort to get the Police Department to conduct orchestrated surveillance did not bear evidential fruit. The following day, the Police Department's Lieutenant, Tara Bradley, advised:

> "Officer Nunez was requested tonight to go by Cielo Farms Nursery regarding a large gathering. When he arrived, he noted approximately 15 vehicles parked in the lot. There were lights on inside, but **no noise could be heard from the roadway** [emphasis added]. It was unknown to the officer what type of event, if any, was occurring inside the business. As requested by Captain Ravine, a report is being written under case # 23-003834."

*See* Correspondence Exchanges dated January 11-13, 2023, attached hereto as **Composite Exhibit "D."**

44.     The security and surveillance persisted despite the lack of evidence they were seeking. The Town of Southwest Ranches, now seeking the aid of the Police Department, wasn't just trying to pursue code investions—it was running a covert operation, treating their roles more like FBI agents on a mission rather than public officials acting in good faith. As opposed to them letting the matter rest, they escalated their efforts, passing along correspondence in a secretive chain of communication.

45.     Around the same time period, the Town Administrator, Defendant Berns, instead of addressing the issue fairly, forwarded the information to Councilmember David Kuczenski with a telling remark that exposed the true nature of their actions: they needed "*better intel*" after "*the noise seems to be coming from elsewhere*":

> Date: Fri, 13 Jan 2023 11:28:32 +0000
> From: Andy Berns <aberns@southwestranches.org>
> To: David Kuczenski <DKuczenski@southwestranches.org>
> Subject: Fwd: [EXTERNAL] Re: Cielo Farms Nursery
>
> David,
> FYI. The noise seems to be coming from elsewhere. We'll keep after this complaint, but we need better intel.
>
> -AB
> Sent via handheld. Please forgive any typos.
>
> Begin forwarded message:

46.     Defendant Berns instructed the Town to gather "better intel" against the Plaintiff, despite admitting under oath that he had never personally witnessed the Plaintiff committing any violations.

> Q.    Did you yourself ever -- ever observe any type of violation by Cielo Farms?
> A.    I didn't see anything personally, no.

> Q.   Okay.   So in the approximately two years that
> you were there in the Southwest Ranches as the city
> manager, as the city manager you never -- never
> personally observed any type of violations by Cielo
> Farms, correct?
>       A.   I did not observe anything, no.
>       Q.   Did you ever observe any kind of noise
> complaints from Cielo Farms personally?
>       A.   Personally, no.

47.     Defendant Berns testified under oath to a stunning display of corruption: Defendant Poliakoff not only initiated the code violation complaint by calling in the alleged infraction against Plaintiff to Defendant Medina but then took on the role of the Town's prosecutor, pursuing the case against the Plaintiff. And as the final act in this fate acompli, Poliakoff presented his case before a magistrate judge—one he personally selected to rule on the Town's violations. The result? A rigged system ripe with conflicts of interest where the referee, the rulebook, and the whistle all belonged to the same person, and as expected, the Town magistrate ruled against Plaintiff. In this regard, Defendant Berns testified as follows:

> Q.   Isn't it true that it was Mr. Poliakoff that
> made a complaint and made numerous complaints against
> Cielo Farms, right?
>       A.   Correct.

> Q.   Not only is the city attorney, Mr. Poliakoff,
> the person who picks the magistrate judge for code
> hearings, but he's also the prosecutor.   He prosecutes
> those cases in front of the magistrate, right?
>       A.   That's correct.

Q.   Because it would not -- it would not be
professional and it would not be handled in the right
way if somebody was acting in a personal manner as the
town attorney on a code enforcement issue, right?
    A.   Yes.
    Q.   And we want to avoid any type of administrator
or head of a department or city attorney from acting in
a personal way when running the town business, right?
    A.   Correct.
    Q.   Because if there was a personal motivation on
the part of the city attorney, that in and of itself
could be a conflict of interest, right?

    A.   It would be undue influence, yeah.

48.     Notwithstanding the Town Administrator's knowledge of this conflicted system of justice, Defendant Berns never confronted Poliakoff concerning the matter.

Q.   Did you have any discussions with Mr.
Poliakoff that there may be a conflict of interest in
his role with Cielo Farms, a home and a homeowner in
the Town of Southwest Ranches?
    A.   I did not have that conversation.

49.     While the Town was misusing resources to improperly surveil and cite Cielo Farms, by January 24, 2023, Defendants Medina, Berns, and Poliakoff were also denying the Plaintiff's request for off-duty police security permits to be paid for at Plaintiff's own expense for baseless reasons, thereby creating unsafe conditions that directly contributed to Mr. Rodriguez's wrongful

arrest incident on March 2, 2023.[1] The Town's denial of Plaintiff's request for off-duty police security permits was particularly egregious given the fact that the Town regularly grants police permits to every signal resident of the Town, as well as businesses operating in the Town.

50.     Within hours of Mr. Rodriguez's wrongful arrest, a member of the Davie Police Department inexplicably notified the Town Administrator, Defendant Berns—a highly unusual and suspicious action. Almost immediately, the Defendant Berns relayed the news to all Town Council members, Poliakoff, and Medina, ensuring that key officials were promptly informed. This sequence of events raises serious concerns about coordinated misconduct. First, the Town deliberately denied Plaintiff a police permit to monitor the event. Then, officers arrived, arrested Mr. Rodriguez, and swiftly reported the arrest—not to the public, not through standard law enforcement channels, but directly to Town leadership. Why the urgency? Why was the Town so invested in Mr. Rodriguez's arrest? The rapid and orchestrated dissemination of this information strongly suggests a calculated effort by Town officials to target and suppress the Plaintiff through abuse of power.

51.     In this regard, Defendant Poliakoff met with Mila Schwartzreich from the Broward County Property Appraiser and instructed her to revoke Plaintiff's agricultural designation As a direct result of Poliakoff's actions, on March 7, 2023, the Broward County Property Appraiser revoked the property's classification, despite its ongoing nursery operations (recognized by the State of Florida), active livestock component, and in full compliance with State agricultural and agritourism laws. The revocation was based on the determination that the property was not being

---

[1] Mr. Rodriguez was arrested for brandishing a firearm—not for discharging it—after being confronted by a group of unruly wedding guests who refused to leave the property in a timely manner. Faced with a tense and escalating situation where members of his family were threatened, he acted to protect himself and his family and restore order, an action that squarely falls within Florida's Stand Your Ground law. The firearm was never discharged and no one was injured as a result of the event.

used for "bona fide agricultural purposes." *See* Denial Letter, **Exhibit "E".** In a bizarre and troubling twist, the individual from the Broward County Property Appraiser's office whose signature appeared on the March 7th Denial Letter, Mr. Patrick Shortsleeve, later testified under oath that he neither signed, issued, nor reviewed the letter. Furthermore, he stated that he has no knowledge of who was responsible for issuing the denial letter bearing his fraudulent signature.

52.     Irrespective of the fraudulent signature on the Broward County Property Appraiser's Denial Letter, the determination ignored the Florida Department of Agriculture's opinion letters, which expressly recognized Plaintiff's agritourism use as lawful and protected under state law[2]. *See* Opinion Letters at Composite **Exhibit "F".**

53.     Thus, the Town and Poliakoff, as its legal counsel, brazenly asserted that their local ruling on an agricultural exception could override the authority of the Florida Department of Agriculture—as if local ordinances and rural ranch zoning could unilaterally eclipse established state law. This unlawful power grab wasn't just legally flawed; it was a deliberate attempt to sidestep the clear and controlling decision already granted to the Plaintiff by the proper regulatory authorities. As a point of fact, the Defendants all maintained written evidence from the State of Florida that the Plaintiff was operating lawfully, but the Defendants collectively chose to ignore the same and continue their efforts to violate the Plaintiff's rights.

54.     The Plaintiff's owner, Mr. Rodriguez, repeatedly sent written communications to the Defendants, clearly outlining his legal authority to operate the Plaintiff's business. However,

---

[2] The Property consists of outdoor growing areas for container growing of nursery stock, a perimeter planting of 'parent plants' to provide cuttings for Bougainvillea to grow and sell, and a barn that is used for growing indoor nursery plants for sale, preparing and propagating plants to be grown out for sale, and for storage of nursery supplies and materials. Additionally, a livestock operation, with shelters and pastures for sheep grown for slaughter. Both the barn and some of the outdoor nursery areas of the property are also sometimes used to hold agritourism qualifying events (such as birthdays, weddings, and parties). All the sections of the property support agricultural uses, including reasonable areas for customer parking, travel lanes, and office with staff parking.

the Defendants not only disregarded these messages but also proceeded with their efforts to shut down his business. *See* Email Correspondence attached hereto as **Composite Exhibit "G."**

55.    The Defendants acted in this manner despite the fact that Plaintiff sought to, and did, operate within the bounds of Florida law, obtaining an agricultural classification for the property and securing the necessary licenses for the nursery operations. In December 2020, the Plaintiff acquired livestock and applied for the agricultural designation, which was duly granted for the year 2021. Over time, Plaintiff undertook significant efforts to develop the land, constructing roads, irrigation systems, and agricultural structures, all with the aim of furthering his lawful agricultural use. However, notwithstanding Plaintiff's efforts, as of March 9, 2023, Plaintiff had received six (6) code violations and accumulated $6,000 in fines from the Town. In fighting the Plaintiff on behalf of the Town, Defendant Poliakoff's law firm has billed the Town a substantial amount of money, staffed their case involving Plaintiff with at least ten (10) different lawyers, and unsuccessfully sought reimbursement for those attorneys' fees from Plaintiff.

56.    Notwithstanding the aforementioned harassment, arbitrary enforcement, and procedural abuse, Plaintiff continued to seek the Town's approval before engaging in any activities to ensure compliance with Town permitting requirements. Unsurprisingly, Plaintiff's efforts were met with unsubstantiated rejections by the Defendants- even for Mr. Rodriguez's grandson's first birthday party being held on his property.

**From:** mr@atlasinvestmentgroupllc.com <mr@atlasinvestmentgroupllc.com>
**Sent:** Monday, June 5, 2023 12:00 PM
**To:** Julio Medina <jmedina@southwestranches.org>; Poliakoff, Keith M. <kpoliakoff@arnstein.com>; Andy Berns <aberns@southwestranches.org>; Aileenrod014@yahoo.com; gr@atlasinvestmentgroupllc.com
**Subject:** RE: [EXTERNAL] Florida affordable housing

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Julio,

I want to have my Grandsons 1st-year birthday party here on the property in August.
My daughter is coordinating the date I anticipate it will be between August 8th to August 12th.
Let me know if I need to get a permit.
This is a free party I am obviously not charging anything.
There will be approximately 100 guests combined adults and children.
Let me know.
Best,

Mike Rodriguez
CEO
ATLASINVESTMENTGROUP LLC
440 Sawgrass Corporate Pkwy Suite 210
Sunrise Fl 33025
954.295.8910
mr@atlasinvestmentgroupllc.com
Skype Atlasinvestmentgroup

--------- Original Message ---------
Subject: RE: [EXTERNAL] Florida affordable housing
From: "Julio Medina" <jmedina@southwestranches.org>
Date: 6/5/23 3:48 pm
To: "mr@atlasinvestmentgroupllc.com" <mr@atlasinvestmentgroupllc.com>, "Keith Poliakoff (GovLawGroup)" <kpolia-koff@govlawgroup.com>, "Andy Berns" <aberns@southwestranches.org>, "Aileenrod014@yahoo.com" <Aileenrod014@yahoo.com>, "gr@atlasinvestmentgroupllc.com" <gr@atlasinvestmentgroupllc.com>

Mr. Rodriguez,

I've reviewed our Code and unfortunately I would be unable to issue a permit for a gathering or birthday celebration on the property due to the fact that it is a vacant lot by definition. The property is not developed and a gathering could only be held as an accessory use to a single-family dwelling. Once the property is developed and has an occupied single-family residence, you would be able to obtain a permit to have a birthday celebration at the property.

(C)*Vacant property.* Assembly upon vacant and undeveloped property, and upon property with an unoccupied dwelling is not a valid accessory use, and is prohibited.

Regards,

Julio A. Medina
Code Enforcement Director
Town of Southwest Ranches
13400 Griffin Road
Southwest Ranches, Florida 33330-2628
(954)343-7458 (Direct)
(954)434-1490 (Fax)

57.     Additionally, on September 11, 2024, Defendant Medina sent an email to a potential investor falsely asserting that Plaintiff's property was "not authorized to host events under [the Town's] zoning code" and that it was located in the Rural Ranches (RR) district, which "does not allow commercial events." This statement was both legally incorrect and misleading, as Florida agritourism statutes expressly preempt local zoning restrictions that attempt to prohibit agritourism activities. This incident exemplifies yet another instance of Town officials, acting under Poliakoff's direction, abusing their authority to undermine Plaintiff's financial stability by disseminating false claims about the property's legal status, ultimately deterring potential investors and buyers:

**From:** Julio Medina <jmedina@southwestranches.org>
**To:** rnegret258@yahoo.com <rnegret258@yahoo.com>
**Sent:** Wednesday, September 11, 2024 at 04:19:40 PM EDT
**Subject:** Cielo Farms- 4680 SW 148 AVE

Mr. Caprio,

As discussed earlier, the property in question is not authorized to host events under our zoning code. The property is in the Rural Ranches (RR) district which does not allow commercial events.

Regards,

Julio A. Medina
Code Compliance Director

58.     As a direct result of Medina's above message, the Plaintiff lost out on a $6,000,000 potential investment into the property since the investor was falsely told by Medina that the property was operating unlawfully.

59.     Crucially, the Florida Department of Agriculture never agreed with the Town's effort to usurp its powers and override their determination that the Plaintiff maintained a proper agricultural exemption that would allow the Plaintiff to lawfully operate its business. In this regard, on October 31, 2023, the Florida Department of Agriculture issued a written letter which expressed its continued position that the Plaintiff was lawfully operating and wrote, *inter alia*, as follows:

5

As a threshold matter, the Department has long considered weddings to fall within the statutory definition of an agritourism activity. Even before the legislature amended the statute to expressly include "civic and ceremonial activities,"[3] there was a reasonable argument that weddings qualified as "recreational" or "entertainment" activities. There is ample historic support for this conclusion, including the long tradition of holding recreational activities in barns,[4] and specifically, of holding weddings in barns.[5]

Finally, I will preemptively note that I believe any agritourism activity is an integral part of an agricultural operation. They not only serve an important and obvious revenue function (i.e. they provide necessary cash in an inherently cyclical industry), but they are a valuable marketing tool. Both functions are integral to any farming operation.

Please contact me at Steven.Hall@FDACS.gov if you have any questions.

Sincerely,

*Steven Hall*

Steven Hall
Assistant Deputy Commissioner

60.     Rather than acknowledging their mistake upon receiving the letter from Florida's Department of Agriculture (another instance of evidence that their position was frivolous), the Defendants disregarded it entirely and instead doubled down on their baseless position, insisting that the Plaintiff's operations were illegal and must be shut down. The Defendants took this position even though Defendant Medina has testified under oath that he expressed concerns to the Town Administrator (Andy Berns) and Defendant Poliakoff that the Plaintiff was not guilty of any code violation since Defendant Poliakoff's code complaints against the Plaintiff appeared to contradict Defendant Medina's interpretation of the Florida Agricultural classification laws. Nonetheless, the Defendants pushed forward against the Plaintiff after Defendant Poliakoff dismissed Defendants Medina and Burns' contradictory opinions that the Plaintiff was operating lawfully.

61.     Additionally, Defendant Poliakoff called in a lighting code violation complaint against the Plaintiff in which Defendant Medina (finally) rejected and determined no citation

should be issued. Upon information, this was the only instance where Defendant Medina did not yield to Defendant Poliakoff's complaints.

62.     Further supporting the claims raised, on February 21, 2024, the Broward County Appellate Division ruled that the Town's Special Magistrate violated the Plaintiff's due process rights by upholding fines issued by Medina. These fines were based on code violation complaints initiated by Poliakoff.

63.     Ultimately, through a pattern of harassment, selective enforcement, and procedural manipulation, the Town orchestrated an environment where Plaintiff's event venue business could not effectively operate for almost two years, depriving the Plaintiff of fundamental property rights without due process. The foregoing has forced Plaintiff to refund over $170,000.00 in deposits and incur a loss of projected income exceeding $6,000,000.00. The chart below details all canceled events, not including those that were never scheduled due to the shutdown, as well as customer deposits that were refunded:

| 03/11/23 | Picnic | $10,560 |
|---|---|---|
| 03/16/23 | Bat Mitzvah | $5,000 |
| 03/25/23 | Wedding | $7,500 |
| 04/01/23 | Baby Shower | $5,000 |
| 04/08/23 | Baby Shower | $4,000 |
| 04/15/23 | 40th Birthday | $8,025 |
| 04/21/23 | School Dance | $5,000 |
| 05/06/23 | Baby Shower | $5,000 |
| 05/26/23 | Wedding | $7,000 |
| 06/03/23 | Sweet Sixteen | $6,000 |
| 06/11/23 | Baptism | $4,000 |
| 06/18/23 | Graduation Party | $5,000 |
| 07/13/23 | Wedding | $6,000 |
| 08/20/23 | Bat Mitzvah | $5,000 |
| 09/03/23 | Wedding | $6,500 |
| 09/23/23 | Wedding | $5,000 |
| 10/13/23 | Wedding | $8,025 |
| 10/28/23 | Wedding | $10,000 |
| 11/02/23 | Wedding | $5,000 |
| 11/04/23 | Wedding | $7,330 |
| 11/09/23 | Wedding | $5,000 |

| 11/12/23 | Wedding | $6,000 |
|----------|---------|--------|
| 11/18/23 | Wedding | $8,025 |
| 12/02/23 | Wedding | $8,025 |
| 12/30/23 | Wedding | $8,025 |
| 01/13/24 | Wedding | $13,000 |
| 01/14/24 | Wedding | $8,025 |
| 02/03/23 | Wedding | $6,000 |
| 02/24/23 | Wedding | $8,025 |
| 03/09/24 | Wedding | $8,025 |

64.     When the Plaintiff submitted a public records request to uncover the rationale behind the Defendants' actions in shutting down the Plaintiff's business, the Town responded with a staggering price tag of approximately $43,000 in order to receive the records. This blatant financial barrier flies in the face of Florida's Sunshine Laws, which are designed to promote government transparency—not restrict it to the wealthiest citizens. The Town's exorbitant pricing scheme was nothing more than a thinly veiled attempt to either block the Plaintiff from accessing critical records or punish him for daring to challenge their overreach.

65.     Further highlighting Poliakoff's malicious intent, in or around November 2024, former town Mayor Doug McKay received a text from Poliakoff stating, "He [Miguel Rodriguez] will be in jail by this January. I'll bet breakfast on it." This chilling remark not only reveals Poliakoff's personal vendetta but also suggests the Defendants' prior knowledge and active participation in the scheme that led to Plaintiff's wrongful arrest and the revocation of his agricultural classification. Thus, the Town attorney, Poliakoff, wasn't just practicing law—he was placing side bets on the Plaintiff's downfall. Confident that their heavy-handed tactics would land the Plaintiff's owner behind bars, he casually wagered breakfast on the outcome, treating the abuse of government power like a game. This wasn't just reckless talk; it was a telling glimpse into the Defendants' strategy—using the threat of incarceration as a cudgel to silence opposition and crush the Plaintiff's challenge to their unlawful efforts to shut down his business.

66.     Furthermore, upon information and belief, Defendant Poliakoff personally reached out to the Broward County State Attorney's office to discuss the criminal case against Mr. Rodriguez. This raises a troubling question—why would a Town Attorney, whose role is to advise on municipal matters, take a personal interest in influencing a resident's criminal case pending outside of the Town?  Regardless, neither the Defendants nor the Broward County State Attorney have voluntarily produced the records showing Poliakoff contacting the Broward County State Attorney's office concerning the criminal case, and Mr. Rodriguez has been required to file a Motion to Compel the release of those records in another pending matter not involving these Defendants.

67.     Moreover, upon information and belief, Poliakoff maliciously disparaged Mr. Rodriguez by falsely telling third parties that Mr. Rodriguez was a member of the "Cuban Mafia"—a widely recognized derogatory slur used to undermine and discredit successful Cuban immigrants.

68.     The more aggressively the Defendants fought to shut down the Plaintiff's business, the clearer it became that their position was not only baseless but deliberately obstructive. Their bad faith became undeniable on January 15, 2024, when Florida's Agritourism Association issued the below letter explicitly affirming the Plaintiff's rights. The letter unequivocally stated that the Association "supports your position that agritourism activities occurring in your barn (i.e., weddings) are key to your nursery operation and are evidence to retain your agricultural status."



January 15, 2024

Cielo Farms Nursery
Gina Rodriguez
4680 Volunteer Road
SW Ranches, FL 33330

Dear Ms. Rodriguez:

The Florida Agritourism Association (FATA) is a state-wide organization that supports the growing agritourism market in Florida, which includes destinations such as working farms and ranches, u-pick fruit and vegetable operations, vineyards and wineries, specialty crops and products, and numerous other types of farms. We encourage and support farms, ranches, and vineyards to take full advantage of the Florida's broad agritourism laws found under chapter 570, Florida Statutes.

It is our understanding that Cielo Farms Nursery is a working nursery and sheep farm on approximately five acres in Broward County. It is also our understanding that Broward County's property appraiser revoked the "agriculture classification" for the property in 2023, based on your offering agritourism activities on your property.

The Florida Legislature has made it abundantly clear that it supports bona fide farms offering agritourism activities and further clarified its position by amending the statute in 2016 to include "civic and ceremonial activities." In 2022, FATA worked to pass legislation (SB1186) so that the statute clearly instructs property appraisers to not deny or revoke agricultural classification if agritourism operations are integral to farm operations. We support your position that agritourism activities occurring in your barn (ie, weddings) are key to your nursery operation, and are evidence to retain your agricultural classification.

Please do not hesitate to call my office if you have further questions. FATA wishes you continued success with your nursery and agritourism venture!

Sincerely,

*Lena Juárez*

Lena Juárez
Executive Director

P.O. Box 15878 ▪ Tallahassee, FL 32317 ▪ (850) 254-5355

69.     The correctness of the Plaintiff's position was further cemented in June 2024, when the Florida Department of Revenue's Value Adjustment Board, through its Special Magistrate, issued its determination that the Plaintiff was granted a proper agricultural exemption on the portion of the property where the wedding and special event venue exists.



70.     Thereafter, in or about October 2024, a significant meeting occurred at the Southwest Ranches Town Hall which included Marty Kiar (Broward County Property Appraiser), Mila Schwartzreich (Broward County Property Appraiser Legal Counsel), Mr. Rodriguez (on behalf of Plaintiff), Steve Breitkruez (present Town Mayor), Defendant Poliakoff, Defendant Muniz (present Town Administrator), Doug McKay (former Town Mayor), and Mary Chapels (town resident). At this meeting, the Broward County Property Appraiser, Marty Kiar, stated to everyone on behalf of Broward County that the Plaintiff was legally allowed to have the subject events at the Plaintiff's business because of the prior ruling on part of the Value Adjustment Board in Plaintiff's favor.

71.     The Defendants have gone through great lengths to hide the behind the scenes efforts to unlawfully target the Plaintiff.  This was further evidenced during a deposition of

Defendant Medina when he testified that Defendant Poliakoff initially called in the code violation in Poliakoff's capacity as a Town residence.  Notwithstanding the same, the Town's Attorney from Defendant Poliakoff's own law firm instructed Medina not to answer the following questions during Medina's deposition:

    A.  Your testimony is that Mr. Poliakoff has never told you to go out and focus on a specific resident in the town?

    B.  Do you recall what Mr. Keith Poliakoff said to you when you received this call about a complaint he was making against Miguel Rodriguez Albisu or Cielo Farms?

    C.  Did Mr. Poliakoff ever direct you to focus on Ceilo Farms?

    D.  Did you tell Mr. Rodriguez that you were concerned that you would be sued by residents of Southwest Ranches because of the actions that you took following orders from the town attorney, Keith Poliakoff?

    E.  Did Mr. Keith Poliakoff ever instruct you to take away fines or code enforcement violations against friends or his or other citizens in the Town of Southwest Ranches?

72.    In the end, the Town treated the Plaintiff's nursery and wedding venue not like a legitimate business, but like a front for an unlawful party house. The Defendants lurked, counted heads, and documented every movement with the precision of a sting operation. They directed their investigators to gather *intel*, snap photos, and compile evidence, all while expressly, albeit quietly, acknowledging that the Plaintiff "*might be right*."

73.    In the end, this case is a textbook example of government overreach—where regulatory power wasn't exercised for the public good but wielded as a weapon against a single property owner without justification. And when their actions started to backfire, the Defendants didn't correct course—they doubled down. Now, Plaintiff seeks not just compensation for the

substantial damages inflicted by the Town and Poliakoff's wrongful actions but also a clear judicial ruling affirming its right to operate Cielo Farms Nursery without unwarranted municipal interference.

74.     The Defendants' orchestrated scheme to abuse government power has been relentless and ongoing up through today. This is the despite the fact that: (a) the Florida Circuit Court sitting in its appellate capacity has ruled that the Town's enforcement actions were unconstitutional and violated Plaintiff's due process rights, (b) the Value Adjustment Board has ruled that the revocation of Plaintiff's agricultural classification was without legal basis- proving their conduct was retaliatory, (c) the Broward County Property Appraiser's official records show that Defendant Poliakoff pressured county officials to revoke Plaintiff's legal status despite no violations ongoing, and (d) testimony under oath and other uncontroverted records prove that the Defendants directly coordinated with law enforcement to improperly investigate the Plaintiff on code violations.

**Damages**

75.     Plaintiff has suffered and seeks millions in lost revenue/profits and substantial out-of-pocket expenses, including significant legal fees and costs under the Wrongful Act doctrine or otherwise, all incurred while battling the Town's unlawful actions. The Plaintiff also seeks punitive damages for the egregious conduct sued upon.

**CAUSES OF ACTION**

**COUNT I**
**(SUBSTANTIVE DUE PROCESS AGAINST THE TOWN– 42 U.S.C. § 1983)**

76.     Plaintiff incorporates each of the above factual allegations as if fully restated here.

77.     The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth

Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

78.     Plaintiff has state-created rights protected by the federal Constitution to lawful use of its property and businesses and lawful operation of its properties and businesses.

79.     The Town of Southwest Ranches, acting under color of state law, has engaged in an arbitrary and capricious course of conduct that deprived Plaintiff of its substantive due process rights under the Fourteenth Amendment to the United States Constitution. Government officials, including the Poliakoff and Code Enforcement officers, have abused their authority to engage in an unjustified campaign of regulatory interference, denying Plaintiff's right to lawfully operate his agrotourism business.

80.     The Town's actions to knowingly and intentionally ignore Plaintiff's agricultural classification was wholly unsupported by law, fact, or precedent. Plaintiff maintained a bona fide agricultural operation, complete with a state-certified nursery, a livestock component, and a duly recognized agritourism business. The Town's actions were taken not through a neutral or honest application of the law, but through a calculated effort to suppress and ultimately eliminate Plaintiff's ability to utilize his property for its intended purpose.

81.     By weaponizing regulatory processes to frustrate Plaintiff's ability to conduct lawful agricultural business, Defendants have engaged in conduct that is both irrational and egregious, rising to the level of a constitutional violation.

82.     There is a direct and causal link between the Town purported policies and customs against Plaintiff and its constitutional rights being violated. The plan against Plaintiff is a persistent and widespread unconstitutional practice, and the Town has full knowledge of such customs,

having been approved and supported by the Town and its resources. The Town's unofficial custom and practice shown through repeated acts of the individual final policy makers for the Town, and through a showing of the municipality's deliberate indifference to the constitutional rights of an individual, and the Town's repeated failure to make any meaningful investigation into Plaintiff's multiple complaints of constitutional violations by the Town directly caused damage to Plaintiff.

83.     Town's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town, including the selective enforcement of its Ordinances and ignoring of Florida recognition of Plaintiff's agricultural operation.

84.     The Town thereby deprived Plaintiff of its constitutionally protected rights.

85.     The Town deprived Plaintiff of its constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis.

86.     Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

87.     The Town acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against the Town:

   a.     awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b) or under the Wrongful Act doctrine, and punitive damages;

   b.     entering a preliminary and permanent injunction compelling the Town to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

c.   entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

d.   granting any other such relief as the Court deems just and proper.

**COUNT II**
**(SUBSTANTIVE DUE PROCESS & PROCEDURAL DUE PROCESS AGAINST DEFENDANT POLIAKOFF**
**– 42 U.S.C. § 1983)**

88.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

89.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

90.    Plaintiff has state-created rights protected by the federal Constitution to lawful use of its property and businesses and lawful operation of its properties and businesses.

91.    Defendant Poliakoff, acting within his capacity as the Town Attorney for The Town of Southwest Ranches, and acting under color of state law, has engaged in an arbitrary and capricious course of conduct that deprived Plaintiff of its substantive due process rights under the Fourteenth Amendment to the United States Constitution.

92.    Poliakoff's decision to knowingly and intentionally ignore Plaintiff's agricultural classification was wholly unsupported by law, fact, or precedent. Plaintiff maintained a bona fide agricultural operation, complete with a state-certified nursery, a livestock component, and a duly recognized agritourism business. Poliakoff's actions were taken not through a neutral or honest application of the law, but through a calculated effort to suppress and ultimately eliminate Plaintiff's ability to utilize his property for its intended purpose.

93.     By weaponizing regulatory processes to frustrate Plaintiff's ability to conduct lawful agricultural business, Poliakoff has engaged in conduct that is both irrational and egregious, rising to the level of a constitutional violation.

94.     Furthermore, Plaintiff was entitled to fair notice and an opportunity to be heard before ignoring his agricultural classification and business operations and imposing code enforcement violations and fines. Instead, Poliakoff engaged in a deliberate scheme to deny Plaintiff any meaningful recourse, first through the arbitrary application of a nursery moratorium and later through the baseless refusal to recognize Plaintiff's agricultural classification.

95.     Poliakoff and the Town failed to provide Plaintiff with adequate notice of their intent to knowingly and intentionally ignore its agricultural status, nor did they afford Plaintiff a reasonable opportunity to contest the allegations in a fair and impartial hearing. Even after Plaintiff submitted extensive evidence demonstrating its continued compliance with agricultural requirements, Poliakoff refused to provide an explanation or justification for its actions, in clear violation of fundamental due process principles.

96.     There is a direct and causal link between Poliakoff's purported policies and customs on behalf of Town against Plaintiff and its constitutional rights being violated. The plan against Plaintiff is a persistent and widespread unconstitutional practice. Poliakoff has full knowledge of such customs, having been approved and supported by the Town and its resources. Poliakoff's unofficial custom and practice is shown through repeated acts, and through a showing of his deliberate indifference to the constitutional rights of an individual, and his repeated failure to make any meaningful investigation into Plaintiff's multiple complaints of constitutional violations by the Town directly caused damage to Plaintiff.

97.     Poliakoff's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town, including his selective enforcement of its Ordinances and ignoring of Florida recognition of Plaintiff's agrotourism operation.

98.     Poliakoff's actions sued upon included:

a.  Taking unwarranted actions as Town Attorney against the Plaintiff, including unlawful and unjustified surveillance and unlawful fines;

b.  Retaliating against the Plaintiff for hosting a Republican political event, including one against Poliakoff's friend and Town council member;

c.  Pursuing unfounded legal complaints and misleading legal advice to the Town counsel based on his own discriminatory animus and spite;

d.  Contacting the Broward County Property Appraiser and falsely claiming that Plaintiff had fraudulently acquired its agricultural designation and was operating a "party house";

e.  Using his position as Town Attorney to advance personal political goals by targeting Plaintiff for its political activities and exercising its First Amendment rights;

f.  Advocating for unwarranted fines and harassment to prevent Plaintiff from operating as a legitimate agritourism business;

g.  Initiating false legal claims regarding Plaintiff's agricultural classification which resulted in legal actions based on false premises;

h.  Engaging in intimidation tactics to suppress Plaintiff's ability to operate its lawful business, including advocating for surveillance harassment, and threatening fines;

i.   Obstructing Plaintiff's ability to conduct business, including preventing Plaintiff from hosting celebratory events and engaging in agritourism activities;

j.   Misrepresenting Florida's agritourism statutes to the Broward County Property Appraiser in an effort to get the appraiser to revoke Plaintiff's agritourism operations;

k.   Exercising a personal vendetta against Plaintiff and its owner and failing to act in good faith while performing his official duties;

l.   Inducing others, including the individually named Defendants, to commit ethical violations including improper surveillance and harassment;

m.   Acting outside the scope of his authority by selectively apply the law to retaliate against Plaintiff;

n.   Manipulating enforcement actions against Plaintiff for personal political vendettas including creating unfounded complaints and legal actions against Plaintiff, all in a manner that was against the public interest;

o.   Pursuing a conflict of interest by calling in code violations as a private individual, and later advising the Town on his personal code complaints and charging the Town through his law firm;

p.   Advocating for unlawful surveillance and harassment against Plaintiff;

q.   Violating Plaintiff's due process rights by disregarding its agricultural classification without a proper hearing or opportunity to appeal;

r.   Selectively applying zoning laws against Plaintiff; and

s.   Obstructing access to public records related to the actions taken against Plaintiff, preventing transparency and accountability.

99.     Poliakoff thereby deprived Plaintiff of its constitutionally protected rights.

100.    Poliakoff deprived Plaintiff of its constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis.

101.    Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

102.    Poliakoff acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Poliakoff:

a.      awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b) or under the Wrongful Act doctrine, and punitive damages;

b.      entering a preliminary and permanent injunction compelling him to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

c.      entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

d.      granting any other such relief as the Court deems just and proper.

**COUNT III**
**(SUBSTANTIVE DUE PROCESS & PROCEDURAL DUE PROCESS AGAINST**
**DEFENDANT MEDINA**
**– 42 U.S.C. § 1983)**

103.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

104.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the

United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

105.    Plaintiff has state-created rights protected by the federal Constitution to lawful use of its property and businesses and lawful operation of its properties and businesses.

106.    Defendant Medina, acting within his capacity as the Code Enforcement for The Town of Southwest Ranches,  and acting under color of state law, has engaged in an arbitrary and capricious course of conduct that deprived Plaintiff of its substantive due process rights under the Fourteenth Amendment to the United States Constitution.

107.    Medina's decision to knowingly and intentionally ignore Plaintiff's agricultural classification was wholly unsupported by law, fact, or precedent. Plaintiff maintained a bona fide agricultural operation, complete with a state-certified nursery, a livestock component, and a duly recognized agritourism business. Medina's actions were taken not through a neutral or honest application of the law, but through a calculated effort to suppress and ultimately eliminate Plaintiff's ability to utilize his property for its intended purpose.

108.    By weaponizing regulatory processes to frustrate Plaintiff's ability to conduct lawful agricultural business, Medina has engaged in conduct that is both irrational and egregious, rising to the level of a constitutional violation.

109.    Furthermore, Plaintiff was entitled to fair notice and an opportunity to be heard before ignoring his agricultural classification and business operations and imposing code enforcement violations and fines. Instead, Medina engaged in a deliberate scheme to deny Plaintiff any meaningful recourse, first through the arbitrary application of a nursery moratorium and later through the baseless refusal to recognize Plaintiff's agricultural classification.

110.    Medina and the Town failed to provide Plaintiff with adequate notice of their intent to knowingly and intentionally ignore its agricultural status, nor did they afford Plaintiff a reasonable opportunity to contest the allegations in a fair and impartial hearing. Even after Plaintiff submitted extensive evidence demonstrating its continued compliance with agricultural requirements, Medina refused to provide an explanation or justification for its actions, in clear violation of fundamental due process principles.

111.    There is a direct and causal link between Medina's purported policies and customs on behalf of Town against Plaintiff and its constitutional rights being violated. The plan against Plaintiff is a persistent and widespread unconstitutional practice. Medina has full knowledge of such customs, having been approved and supported by the Town and its resources. Medina's unofficial custom and practice is shown through repeated acts, and through a showing of his deliberate indifference to the constitutional rights of an individual, and his repeated failure to make any meaningful investigation into Plaintiff's multiple complaints of constitutional violations by the Town directly caused damage to Plaintiff.

112.    Medina's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town, including his selective enforcement of its Ordinances and ignoring of Florida recognition of Plaintiff's agrotourism operation.

113.    Medina's actions sued upon included:

a. Making false and misleading statements about Plaintiff's business operations to third parties, including brokers, potential clients, and business associates, with the intent to deter them from engaging in business with Plaintiff;

b. Misrepresenting the legal status of Plaintiff's property and operations by falsely claiming that Plaintiff's agritourism activities were unlawful, despite clear protections under Florida law, to discourage potential customers, investors, and business partners;

c. Obstructing Plaintiff's business by wrongfully denying security permits, issuing baseless code violations, and improperly revoking Plaintiff's agricultural classification, directly disrupting his ability to operate; and

d. Leveraging law enforcement resources to surveil and interfere with Plaintiff's lawful business activities, further discouraging potential clients and business associates.

114.   Medina thereby deprived Plaintiff of its constitutionally protected rights.

115.   Medina deprived Plaintiff of its constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis.

116.   Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

117.   Medina acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Medina:

a.   awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b) or under the Wrongful Act doctrine, and punitive damages;

b.   entering a preliminary and permanent injunction compelling him to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

c.   entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

d.      granting any other such relief as the Court deems just and proper.

**COUNT IV**
**(SUBSTANTIVE DUE PROCESS & PROCEDURAL DUE PROCESS AGAINST**
**DEFENDANT BERNS**
**– 42 U.S.C. § 1983)**

118.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

119.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

120.    Plaintiff has state-created rights protected by the federal Constitution to lawful use of its property and businesses and lawful operation of its properties and businesses.

121.    Defendant Berns, acting within his capacity as the Town Administrator for The Town of Southwest Ranches,  and acting under color of state law, has engaged in an arbitrary and capricious course of conduct that deprived Plaintiff of its substantive due process rights under the Fourteenth Amendment to the United States Constitution.

122.    Bern's decision to knowingly and intentionally ignore Plaintiff's agricultural classification was wholly unsupported by law, fact, or precedent. Plaintiff maintained a bona fide agricultural operation, complete with a state-certified nursery, a livestock component, and a duly recognized agritourism business. Berns' actions were taken not through a neutral or honest application of the law, but through a calculated effort to suppress and ultimately eliminate Plaintiff's ability to utilize his property for its intended purpose.

123.    By weaponizing regulatory processes to frustrate Plaintiff's ability to conduct lawful agricultural business, Berns has engaged in conduct that is both irrational and egregious, rising to the level of a constitutional violation.

124.    Furthermore, Plaintiff was entitled to fair notice and an opportunity to be heard before ignoring his agricultural classification and business operations and imposing code enforcement violations and fines. Instead, Berns engaged in a deliberate scheme to deny Plaintiff any meaningful recourse, first through the arbitrary application of a nursery moratorium and later through the baseless refusal to recognize Plaintiff's agricultural classification.

125.    Berns and the Town failed to provide Plaintiff with adequate notice of their intent to knowingly and intentionally ignore its agricultural status, nor did they afford Plaintiff a reasonable opportunity to contest the allegations in a fair and impartial hearing. Even after Plaintiff submitted extensive evidence demonstrating its continued compliance with agricultural requirements, Berns refused to provide an explanation or justification for its actions, in clear violation of fundamental due process principles.

126.    There is a direct and causal link between Bern's purported policies and customs on behalf of Town against Plaintiff and its constitutional rights being violated. The plan against Plaintiff is a persistent and widespread unconstitutional practice. Berns has full knowledge of such customs, having been approved and supported by the Town and its resources. Berns's unofficial custom and practice is shown through repeated acts, and through a showing of his deliberate indifference to the constitutional rights of an individual, and his repeated failure to make any meaningful investigation into Plaintiff's multiple complaints of constitutional violations by the Town directly caused damage to Plaintiff.

127.    Bern's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town, including his selective enforcement of its Ordinances and ignoring of Florida recognition of Plaintiff's agrotourism operation.

128.    Berns's actions sued upon included:

a.    Retaliating against Plaintiff and involving the Police Department to seek "intel" as a result of Plaintiff's political election watch party set forth above, which resulted in retaliatory actions such as denial of permits and fines in violation of 42 U.S.C. Section 1983;

b.    Denying Plaintiff's request for off duty police for event security based on retaliatory and discriminatory animus in violation of 42 U.S.C. Section 1983;

c.    Selectively applying zoning laws against the Plaintiff for politically motivated reasons in violation of 42 U.S.C. Section 1983;

d.    Knowingly failing to stop unlawful conduct within the Town when the Town's position and violations, most specifically those advocated by Poliakoff and Medina, were clear, all in violation of 42 U.S.C. Section 1983 & Fla. Stat. 838.022;

129.    Berns thereby deprived Plaintiff of its constitutionally protected rights.

130.    Berns deprived Plaintiff of its constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis.

131.    Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

132.    Berns acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Berns:

    a.    awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b) or under the Wrongful Act doctrine, and punitive damages;

    b.    entering a preliminary and permanent injunction compelling him to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

    c.    entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

**COUNT V**
**(SUBSTANTIVE DUE PROCESS & PROCEDURAL DUE PROCESS AGAINST**
**DEFENDANT MUNIZ**
**– 42 U.S.C. § 1983)**

133.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

134.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

135.    Plaintiff has state-created rights protected by the federal Constitution to lawful use of its property and businesses and lawful operation of its properties and businesses.

136.    Defendant Muniz, acting within his capacity as the Town Administrator for The Town of Southwest Ranches, and acting under color of state law, has engaged in an arbitrary and capricious course of conduct that deprived Plaintiff of its substantive due process rights under the Fourteenth Amendment to the United States Constitution.

137. Muniz's decision to knowingly and intentionally ignore Plaintiff's agricultural classification was wholly unsupported by law, fact, or precedent. Plaintiff maintained a bona fide agricultural operation, complete with a state-certified nursery, a livestock component, and a duly recognized agritourism business. Muniz's actions were taken not through a neutral or honest application of the law, but through a calculated effort to suppress and ultimately eliminate Plaintiff's ability to utilize his property for its intended purpose.

138. By weaponizing regulatory processes to frustrate Plaintiff's ability to conduct lawful agricultural business, Muniz has engaged in conduct that is both irrational and egregious, rising to the level of a constitutional violation.

139. Furthermore, Plaintiff was entitled to fair notice and an opportunity to be heard before ignoring his agricultural classification and business operations and imposing code enforcement violations and fines. Instead, Muniz engaged in a deliberate scheme to deny Plaintiff any meaningful recourse, first through the arbitrary application of a nursery moratorium and later through the baseless refusal to recognize Plaintiff's agricultural classification.

140. Muniz and the Town failed to provide Plaintiff with adequate notice of their intent to knowingly and intentionally ignore its agricultural status, nor did they afford Plaintiff a reasonable opportunity to contest the allegations in a fair and impartial hearing. Even after Plaintiff submitted extensive evidence demonstrating its continued compliance with agricultural requirements, Muniz refused to provide an explanation or justification for its actions, in clear violation of fundamental due process principles.

141. There is a direct and causal link between Muniz's purported policies and customs on behalf of Town against Plaintiff and its constitutional rights being violated. The plan against Plaintiff is a persistent and widespread unconstitutional practice. Muniz has full knowledge of such

customs, having been approved and supported by the Town and its resources. Muniz's unofficial custom and practice is shown through repeated acts, and through a showing of his deliberate indifference to the constitutional rights of an individual, and his repeated failure to make any meaningful investigation into Plaintiff's multiple complaints of constitutional violations by the Town directly caused damage to Plaintiff.

142.    Muniz's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town, including his selective enforcement of its Ordinances and ignoring Florida recognition of Plaintiff's agrotourism operation.

143.    Muniz's actions sued upon included:

   a.  Retaliating against Plaintiff for engaging in political activities, including hosting political events by supporting the denial of permits and issuing fines;

   b.  Denying Plaintiff's request for off duty police for event security based on retaliatory and discriminatory animus in violation of 42 U.S.C. Section 1983;

   c.  Selectively applying zoning laws against the Plaintiff for politically motivated reasons in violation of 42 U.S.C. Section 1983;

   d.  Demanding an unconscionable $43,000 payment to receive the Town's public records in violation of Florida's Public Records Laws;

   e.  Knowingly failing to stop unlawful conduct within the Town when the Town's position and violations, most specifically those advocated by Poliakoff and Medina, were clear, all in violation of 42 U.S.C. Section 1983 & Fla. Stat. 838.022;

144.    Muniz thereby deprived Plaintiff of its constitutionally protected rights.

145.    Muniz deprived Plaintiff of its constitutionally protected rights for no legitimate purpose, and for reasons that were and are pretextual and therefore arbitrary and capricious and with no legitimate rational basis.

146.    Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

147.    Muniz acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant Muniz:

    a.    awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b) or under the Wrongful Act doctrine, and punitive damages;

    b.    entering a preliminary and permanent injunction compelling him to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

    c.    entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

## COUNT VII
## (SUBSTANTIVE DUE PROCESS AGAINST THE TOWN, FLORIDA CONSTITUTION)

148.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

149.    Section Nine of the Florida Constitution prohibits the Town from "depriv[ing any person] of life, liberty or property without due process of law."

150.    Plaintiff has rights protected by the Florida Constitution in its private property.

151.    Plaintiff  has property rights protected by the Florida Constitution to lawful use of its properties and businesses lawful operation of its properties and businesses.

152. The Town developed and acted in an official policy to deprive Plaintiff of its constitutionally protected property and business rights, as described herein.

153. In addition and in the alternative, the Town's pattern and practice of similar and interlocking malicious conduct to deprive and resulting in depriving Plaintiff of its constitutionally protected property and business rights, described herein, constitutes a policy and custom of the Town to do so.

154. In addition, and in the alternative, the Town was deliberately indifferent to and therefore adopted the actions of its officials, agents and employees in depriving Plaintiff of its constitutionally protected property and business rights, as described herein.

155. The Town's policy, pattern, and practice of depriving Plaintiff of its constitutional rights was in part substantiated by and effectuated through legislative acts of the Town.

156. The Town thereby deprived Plaintiff of its constitutionally protected rights.

157. The Town deprived Plaintiff of its constitutionally protected rights for an improper motive and by arbitrary and capricious means.

WHEREFORE, Plaintiff demands judgment in its favor and against the Town:

    a.     entering a preliminary and permanent injunction compelling the Town to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

    b.     entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity Town to prevent Plaintiff from enjoying its constitutionally protected rights; and

    c.     granting any other such relief as the Court deems just and proper.

## COUNT VIII
### (PROCEDURAL DUE PROCESS AGAINST THE TOWN– 42 U.S.C. § 1983)

158. Plaintiff incorporates each of the above factual allegations as if fully restated here.

159.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing] any person of life, liberty, or property, without due process of law." The Fifth Amendment to the United States Constitution as applied by the Fourteenth Amendment to the United States Constitution prohibits the Town from "depriv[ing a person] of life, liberty, or property, without due process of law."

160.    Plaintiff has a liberty and property interest in its private property and business operations.

161.    Plaintiff was entitled to fair notice and an opportunity to be heard before being deprived of his agricultural classification and business operations. Instead, the Town engaged in a deliberate scheme to deny Plaintiff any meaningful recourse, first through the arbitrary application of a nursery moratorium and later through the baseless denial of Plaintiff's agricultural classification

162.    The Town failed to provide Plaintiff with adequate notice of its intent to revoke his agricultural status, nor did it afford him a reasonable opportunity to contest the revocation in a fair and impartial hearing. Even after Plaintiff submitted extensive evidence demonstrating his continued compliance with agricultural requirements, the Town refused to provide an explanation or justification for its actions, in clear violation of fundamental due process principles.

163.    As described herein, the Town undertook those deprivations of those protected interests without affording Plaintiff notice and an opportunity to be heard, both prior to and after the deprivations of those protected interests.

164.    The Town thereby deprived Plaintiff of its constitutionally protected rights.

165.    Such deprivation was the result of an abuse of governmental power in excess of ordinary tortious conduct.

166.    The Town acted herein under the color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against the Town:

    a.    awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the deprivation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b);

    b.    entering a preliminary and permanent injunction compelling the Town to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

    c.    entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity to prevent Plaintiff from enjoying its constitutionally protected rights; and

    d.    granting any other such relief as the Court deems just and proper.

    e.    granting any other such relief as the Court deems just and proper.

## COUNT IX
## (EQUAL PROTECTION AGAINST THE TOWN, CLASS OF ONE – 42 U.S.C. § 1983)

167.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

168.    The Fourteenth Amendment to the United States Constitution prohibits the Town from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

169.    Plaintiff has constitutionally protected rights to equal protection of and under the laws.

170.    The Town of Southwest Ranches, through its officials and agents, has selectively enforced zoning and agricultural regulations against Plaintiff in a manner that is disparate from similarly situated property owners. Other agricultural businesses within the Town have not faced the same regulatory roadblocks, nor have they been subjected to the same level of scrutiny and obstruction.

171.    The Town's regulatory conduct in respect of and treatment of Plaintiff's property and businesses is different from, and intentionally discriminatory in comparison to, all other agritourism properties and business owners and operators within the Town, who are prima facie identical to Plaintiff in all relevant respects.

172.    There is no rational basis for such difference in Plaintiff' treatment by the Town. All bases provided by the Town for its different treatment of Plaintiff' are pretextual and thus inherently arbitrary and capricious.

173.    The Town's actions against Plaintiff have been motivated by improper considerations, including retaliation for Plaintiff's insistence on exercising his legal rights. This disparate treatment lacks any rational basis and serves no legitimate governmental interest, violating Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment

174.    The Town acted herein under color of law.

WHEREFORE, Plaintiff demands judgment in its favor and against the Town:

a.      awarding damages in an amount including but not limited to the actual damages, consequential damages, remunerative damages, lost profits, associated with the violation of Plaintiff's constitutional rights, as well as all pre- and post-judgment interest and attorneys' fees and costs as provided by 42 U.S.C. § 1983 and 42 U.S.C. § 1988(b);

b.      entering a preliminary and permanent injunction compelling the Town to issue all entitlements to permit Plaintiff to enjoy its constitutionally protected rights;

c.      entering a preliminary and permanent injunction preventing the Town from taking any action including in its governmental capacity to prevent Plaintiff from enjoying its constitutionally protected rights;

d.      granting any other such relief as the Court deems just and proper.

## COUNT X
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST POLIAKOFF

175.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

176.    Plaintiff had existing and prospective business relationships with various individuals and entities, including event clients and vendors who were willing and able to provide benefits to Plaintiff and his business.

177.    Poliakoff knew or should have known of the existence and nature of these relationships.  He tortiously interfered with these business relationships by:

a.  Taking unwarranted actions as Town Attorney against the Plaintiff, including unlawful and unjustified surveillance and unlawful fines;

b.  Retaliating against the Plaintiff for hosting a Republican political event, including one against Poliakoff's friend and Town council member;

c.  Pursuing unfounded legal complaints and misleading legal advice to the Town counsel based on his own discriminatory animus and spite;

d.  Contacting the Broward County Property Appraiser and falsely claiming that Plaintiff had fraudulently acquired its agricultural designation and was operating a "party house";

e.  Using his position as Town Attorney to advance personal political goals by targeting Plaintiff for its political activities and exercising its First Amendment rights;

f.  Advocating for unwarranted fines and harassment to prevent Plaintiff from operating as a legitimate agritourism business;

g.  Initiating false legal claims regarding Plaintiff's agricultural classification which resulted in legal actions based on false premises;

h.  Engaging in intimidation tactics to suppress Plaintiff's ability to operate its lawful business, including advocating for surveillance harassment, and threatening fines;

i.  Obstructing Plaintiff's ability to conduct business, including preventing Plaintiff from hosting celebratory events and engaging in agritourism activities;

j.  Misrepresenting Florida's agritourism statutes to the Broward County Property Appraiser in an effort to get the appraiser to revoke Plaintiff's agritourism operations;

k.  Exercising a personal vendetta against Plaintiff and its owner and failing to act in good faith while performing his official duties;

l.  Inducing others, including the individually named Defendants, to commit ethical violations including improper surveillance and harassment;

m.  Acting outside the scope of his authority by selectively apply the law to retaliate against Plaintiff;

n.  Manipulating enforcement actions against Plaintiff for personal political vendettas including creating unfounded complaints and legal actions against Plaintiff, all in a manner that was against the public interest;

o.  Pursuing a conflict of interest by calling in code violations as a private individual, and later advising the Town on his personal code complaints and charging the Town through his law firm;

p.  Advocating for unlawful surveillance and harassment against Plaintiff;

q.  Violating Plaintiff's due process rights by revoking its agricultural classification without a proper hearing or opportunity to appeal;

r.  Selectively applying zoning laws against Plaintiff; and

s.  Obstructing access to public records related to the actions taken against Plaintiff, preventing transparency and accountability.

178.     As a direct and foreseeable result of Defendant Poliakoff's interference, Plaintiff has suffered substantial harm, including lost business opportunities, reputational damage, and significant financial losses.

WHEREFORE, Plaintiff seeks a judgment for damages against Defendant Poliakoff, for costs, prejudgment interest, post judgment interest, and for any further relief the court deems just and proper.

**COUNT XII**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST MEDINA**

179.     Plaintiff incorporates each of the above factual allegations as if fully restated here.

180.     Plaintiff had existing and prospective business relationships with various individuals and entities, including event clients and vendors who were willing and able to provide benefits to Plaintiff and his business.

181.     Medina knew or should have known of the existence and nature of these relationships. He tortiously interfered with these business relationships by:

a.   Making false and misleading statements about Plaintiff's business operations to third parties, including brokers, potential clients, and business associates, with the intent to deter them from engaging in business with Plaintiff;

b.   Misrepresenting the legal status of Plaintiff's property and operations by falsely claiming that Plaintiff's agritourism activities were unlawful, despite clear protections under Florida law, to discourage potential customers, investors, and business partners;

c.   Obstructing Plaintiff's business by wrongfully denying security permits, issuing baseless code violations, and improperly revoking Plaintiff's agricultural classification, directly disrupting his ability to operate; and

      d.   Leveraging law enforcement resources to surveil and interfere with Plaintiff's lawful business activities, further discouraging potential clients and business associates.

182. The Town Attorney, along with Code Enforcement officials, directly participated in these efforts by misrepresenting the legal status of Plaintiff's property to brokers, potential buyers, and other third parties. By falsely asserting that Plaintiff's agritourism activities were unlawful—despite clear protections under Florida law—Defendants sought to undermine Plaintiff's business relationships and deter commercial engagement.

183. As a direct and foreseeable result of Defendants' interference, Plaintiff has suffered substantial harm, including lost business opportunities, reputational damage, and significant financial losses.

WHEREFORE, Plaintiff seeks a judgment for damages against Defendants, for costs, prejudgment interest, post judgment interest, and for any further relief the court deems just and proper.

### COUNT XIII
### <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>
### <u>(AGAINST BERNS)</u>

169. Plaintiff incorporates each of the above factual allegations as if fully restated here.

170. Plaintiff had existing and prospective business relationships with various individuals and entities, including event clients and vendors who were willing and able to provide benefits to Plaintiff and his business.

171. Berns knew or should have known of the existence and nature of these relationships.

    a.   Berns intentionally and unjustifiably interfered with these business relationships by:

    b.   Retaliating against Plaintiff and involving the Police Department to seek "intel" as a result of Plaintiff's political election watch party set forth above, which resulted in retaliatory actions such as denial of permits and fines in violation of 42 U.S.C. Section 1983;

    c.   Denying Plaintiff's request for off duty police for event security based on retaliatory and discriminatory animus in violation of 42 U.S.C. Section 1983;

    d.   Selectively applying zoning laws against the Plaintiff for politically motivated reasons in violation of 42 U.S.C. Section 1983;

    e.   Knowingly failing to stop unlawful conduct within the Town when the Town's position and violations, most specifically those advocated by Poliakoff and Medina, were clear, all in violation of 42 U.S.C. Section 1983 & Fla. Stat. 838.022;

172.    As a direct and foreseeable result of Medina's interference, Plaintiff has suffered substantial harm, including lost business opportunities, reputational damage, and significant financial losses.

WHEREFORE, Plaintiff seeks a judgment for damages against Julio A. Medina, for costs, prejudgment interest, post judgment interest, and for any further relief the court deems just and proper.

### COUNT XIV
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (AGAINST MUNIZ)

173.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

174. Plaintiff had existing and prospective business relationships with various individuals and entities, including event clients and vendors who were willing and able to provide benefits to Plaintiff and his business.

175. Muniz knew or should have known of the existence and nature of these relationships.

176. Muniz intentionally and unjustifiably interfered with these business relationships by:

   a. Retaliating against Plaintiff for engaging in political activities, including hosting political events by supporting the denial of permits and issuing fines;

   b. Denying Plaintiff's request for off duty police for event security based on retaliatory and discriminatory animus in violation of 42 U.S.C. Section 1983;

   c. Selectively applying zoning laws against the Plaintiff for politically motivated reasons in violation of 42 U.S.C. Section 1983;

   d. Demanding an unconscionable $43,000 payment to receive the Town's public records in violation of Florida's Public Records Laws;

   e. Knowingly failing to stop unlawful conduct within the Town when the Town's position and violations, most specifically those advocated by Poliakoff and Medina, were clear, all in violation of 42 U.S.C. Section 1983 & Fla. Stat. 838.022;

177. As a direct and foreseeable result of Muniz's interference, Plaintiff has suffered substantial harm, including lost business opportunities, reputational damage, and significant financial losses.

WHEREFORE, Plaintiff seeks a judgment for damages against Defendant Muniz, for costs, prejudgment interest, post judgment interest, and for any further relief the court deems just and proper.

## COUNT XV
## DECLARATORY AND INJUNCTIVE RELIEF

178.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

179.   Plaintiff seeks declaratory relief affirming his right to conduct agritourism activities under Florida law and enjoining the Town from further arbitrary and capricious interference with his business operations. The Town's actions violate Florida Statutes §§ 570.85-570.89, which expressly preempt local governments from imposing restrictions on agritourism activities beyond what state law allows.

180.   Absent judicial intervention, Defendants will continue to obstruct Plaintiff's lawful exercise of property rights, causing irreparable harm.

WHEREFORE Plaintiff respectfully requests this Court to enter a judgment:

a.   Granting a temporary and/or permanent injunction enjoining Defendants from enforcing or attempting to enforce any unlawful restrictions on Plaintiff's agrotourism activities;

b.   Declaring that Defendants actions are arbitrary, capricious, and in violation of Florida Statutes §§ 570.85-570.89;

c.   Declaring that Defendants' restrictions on Plaintiff's agritourism activities exceed the authority granted to local governments under Florida Statutes §§ 570.85-570.89 and are therefore unlawful.

d.   Declaring that Plaintiff has the right to conduct agrotourism activities without undue interference from Defendants;

e.  Awarding Plaintiff his costs incurred in bringing and prosecuting this action; and

f.  Granting such other or further relief as may be just or appropriate.

**DEMAND FOR JURY TRIAL**

181.  Plaintiff demands a trial by jury on all claims so triable.

Dated this 19th day of March, 2025.

> COLE, SCOTT & KISSANE, P.A.
> *Attorneys for Plaintiff*
> 9150 South Dadeland Boulevard
> Suite 1400
> Miami, Florida 33156
> Telephone: 305-350-5300
> Facsimile:  305-373-2294
> cody.german@csklegal.com
> andrew.simon@csklegal.com
> monique.griffin@csklegal.com
> magaly.triana@csklegal.com
>
> By:  ***/s/ Cody German***
> CODY GERMAN
> FBN: 58654
> ANDREW G. SIMON
> FBN:  1002623
> GABRIELA S. LAZARO
> FBN: 123588
> OLIVIA DIAZ DE VILLEGAS
> FBN: 1044657